# In the United States Court of Federal Claims

No. 14-1243C
(E-Filed: January 29, 2015)

| | |
|---|---|
| CANPRO INVESTMENTS LTD., | Preliminary Injunction; Contract Performance; Nuisance; Motion to Dismiss; Jurisdiction; Tucker Act, 28 U.S.C. § 1491; Contract Disputes Act (CDA), 41 U.S.C. §§ 7103, 7104; Final Decision Required; Transfer; 28 U.S.C. § 1631 |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

Richard S. Porter, Coral Gables, Florida, for plaintiff.

P. Davis Oliver, Trial Attorney, with whom were Joyce R. Branda, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, District of Columbia, for defendant.

## OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

Plaintiff CanPro Investments Ltd. (CanPro) filed a Complaint against the government seeking a preliminary injunction to abate alleged health, safety, and other concerns arising from the government's ostensible misuse of real property.  See, generally, Compl., Dec. 31, 2014, ECF No. 1.  CanPro owns and operates a Florida commercial office building, which it leases in part to the Government Services Administration (GSA) for use by the Social Security Administration (SSA).  Id. at ¶¶ 2–4, 6.  CanPro contends there are at least 400 to 500 public visitors to the SSA office daily. Id. ¶ 10.  Such traffic regularly exceeds the anticipated and reasonable volume of not more than 250 visitors a day, and is causing overcrowding, disruption, and health and safety concerns, as well as increasing security and maintenance costs.  Id. ¶¶ 9–15, 17. CanPro complains that these problems adversely affect its own use and enjoyment of the property, as well as its reputation and relations with other tenants and prospective tenants. Id. ¶¶ 13–14, 16–20.

As a government contractor, CanPro "submitted a certified [c]laim to the Contracting Officer" on or about November 12, 2014 (prior to the instant suit), "regarding monetary claims relating to [events on] the Leased Premises." See id. ¶ 23; see, generally, Contract Disputes Act (CDA), 41 U.S.C. §§ 7101–7109 (2012). However, "due to the safety issues that [the government has] refused to address," plaintiff filed its Complaint in this court, on December 31, 2014, for "emergency preliminary injunctive relief . . . pending a decision by the contracting officer and/or this court upon review of the claim, if necessary." Compl. ¶ 23 (capitalization altered). Specifically, CanPro asks that the government "take all measures necessary to abate the nuisance and to limit the number of visitors . . . to less than 225 a day." Id. at *11 ("wherefore" clause).

Upon receipt of plaintiff's Complaint, the court entered a preliminary order dated December 31, 2014, ECF No. 4, expressing concern that jurisdiction over CanPro's action is wanting. The court noted, in particular, that (i) plaintiff's claim appears to be pled as a nuisance claim (sounding in tort) rather than as a breach of contract claim, cf. 28 U.S.C. § 1491(a)(1) (2012) (excluding tort from this court's jurisdiction); and (ii) even if it were alleging a breach of contract, plaintiff filed its Complaint prior to the issuance of a final decision by the contracting officer, cf. 41 U.S.C. §§ 7103(a), 7104(b)(1); M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (holding that CDA jurisdiction "requires both a valid claim and a contracting officer's final decision on that claim").

The court stayed the merits of the request for preliminary injunction in favor of expedited briefing on the issue of jurisdiction and, if appropriate, potential transfer to an alternate forum pursuant to 28 U.S.C. § 1631 (2012). Order, Dec. 31, 2014, at 1–2. In response, defendant submitted a Motion to Dismiss (Def.'s Mot.), ECF No. 6, addressing the limited subjects of jurisdiction and transfer, to which plaintiff filed a Reply (Pl.'s Reply), ECF No. 7, that included a copy of its certified claim to the contracting officer (Certified Claim), ECF No. 7-1, and the contracting officer's notice of decision deadline (CO's Notice), ECF No. 7-2. No further briefing or oral argument was solicited or deemed necessary.

I.      Standard of Review

A court's jurisdiction defines the extent of its "statutory or constitutional power to adjudicate [a] case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A court's "[s]ubject-matter jurisdiction may be challenged at any time by the parties, or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004); see also, e.g., Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008). In fact, "courts must always look to their jurisdiction, whether the parties raise the issue or not." View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997).

The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). While the court will accept as true all undisputed allegations of fact made by plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006), disputed questions of fact relevant to jurisdiction may be decided by the court and, in so doing, the court may look to facts beyond the complaint to reach its decision, Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (citing Reynolds, 846 F.2d at 747).

If a court determines that a case falls outside its jurisdiction, "'the court cannot proceed at all . . . [and] the only function remaining to the court is that of announcing [the lack of jurisdiction] and dismissing the cause.'" Steel Co., 523 U.S. at 94 (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868)); Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also R. Ct. Fed. Cl. (RCFC) 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Alternatively, the court may transfer the action to another forum, if appropriate. See 28 U.S.C. § 1631.

II.     Discussion

     A.     Plaintiff Must Pursue Relief Through the Contract Disputes Act

The Tucker Act, 28 U.S.C. § 1491(a), waives sovereign immunity with respect to claims arising from express contracts with the government as well as claims and disputes subject to the CDA, 41 U.S.C. § 7104(b)(1). The CDA, in turn, encompasses disputes over leaseholds the government "creates . . . for itself by agreement" despite language in the CDA expressly excluding contracts for "'the procurement of . . . real property in being.'" Forman v. United States, 767 F.2d 875, 879 (Fed. Cir. 1985) (interpreting and quoting predecessor statute, 41 U.S.C. § 602(a)(1) (1982), later re-located to 41 U.S.C. § 7102(a)(1)). The Federal Circuit has explained that the act of entering into a lease does not constitute "the procurement of . . . real property in being" because "[a] leasehold does not exist until a lease is entered into, and by entering into a lease the Government does not acquire a pre-existing interest in the land; it establishes a new one." Id. (distinguishing newly created leaseholds, which are subject to the CDA, from leaseholds held by another that the government acquires through eminent domain, which fall outside the CDA) (emphasis added); see Hamza v. United States, 31 Fed. Cl. 315, 320 (1994) (citing Forman, 767 F.2d at 878, to support CDA jurisdiction over dispute concerning lease of Saudi Arabian property to the United States); cf. Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 254 (2000) (holding the court lacked CDA-jurisdiction over lease the United States Postal Service acquired "incident to its purchase of the underlying fee interest from a foreclosing creditor" because it was "succeeding to an existing real property interest" that "was simply an existing encumbrance on the fee title").

This court's authority to adjudicate CDA leasehold disputes encompasses the authority to grant nonmonetary relief in appropriate circumstances.  Section 1491(a)(2) provides that the court "shall have jurisdiction to render judgment upon any claim by or against . . . a contractor arising under [the CDA], including a dispute concerning termination of a contract, rights in tangible or intangible property, . . . and other nonmonetary disputes."  See also id. ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.").  As construed by the Federal Circuit, this jurisdiction is "expansive, not restrictive."  Alliant Techsys., Inc. v. United States, 178 F.3d 1260, 1268 (Fed. Cir. 1999).  The plain language of the statute supports this construction:  "[T]he statute begins by broadly granting the court jurisdiction over 'any claim[]'; it starts the list of specific kinds of nonmonetary disputes with a nonrestrictive term ('including'); and it ends the list with equally nonrestrictive language ('and other nonmonetary disputes')."  Id. (quoting 28 U.S.C. § 1491(a)(2)).

The court need not reach the issue, however, of whether its CDA authority over nonmonetary leasehold disputes—or the court's general power "to remand . . . with such direction as it may deem proper and just," 28 U.S.C. § 1491(a)(2)—extends to allow the injunctive relief CanPro seeks here, cf. Davis Grp., Inc. v. United States, No. 12-275 C, 2012 WL 2686053, *2–*3 (Fed. Cl. July 6, 2012) (holding injunctive relief not available); Todd Constr., L.P. v. United States, 88 Fed. Cl. 235, 243–46 (2009) (holding injunctive relief is generally not available on CDA claims pursuant to the court's remand authority), aff'd on other grounds, 656 F.3d 1306, 1311 n.3 (Fed. Cir. 2011) (noting that whether the Court of Federal Claims had the power to issue injunctive relief on a CDA claim was outside the scope of the appeal).  For the reasons discussed more fully below, plaintiff's CDA claim is not ripe for review.

The court may exercise its CDA jurisdiction only after a party has submitted a claim to the contracting officer and the contracting officer has issued a final decision.  See 28 U.S.C. § 1491(a)(2) (providing for jurisdiction after "a decision of the contracting officer has been issued under section 6 of [the CDA]"); 41 U.S.C. §§ 7103(a), (d), (g), 7104(b)(1) (requiring a claim and a decision before bringing suit in this court); Raytheon Co. v. United States, 747 F.3d 1341, 1354 (Fed. Cir. 2014) ("It is a bedrock principle of government contract law that contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision."); Alliant Techsys., 178 F.3d at 1264 (explaining jurisdictional prerequisites are a CDA-qualified claim followed by a final decision of the contracting officer); Williams v. United States, 118 Fed. Cl. 533, 538 (2014) ("[P]ursuant to the CDA, our jurisdiction over a claim 'is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.'" (quoting England v. The Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004))); Tidewater Contractors, Inc. v. United States, 107 Fed. Cl. 779, 783 (2012) (holding that a final decision is a jurisdictional

prerequisite); Diversified Maint. Sys., Inc. v. United States, 103 Fed. Cl. 431, 438 (same, citing authorities).

Here, plaintiff's claim arises from a lease agreement for commercial office space that it executed directly with the government; as such, the claim pertains to a newly created leasehold interest that is subject to the CDA. And, in accordance with the CDA, CanPro filed a certified claim[1] with the contracting officer before filing suit. See Compl. ¶¶ 5, 23. However, the contracting officer has yet to issue a final decision and, without waiting for the issuance of a decision, CanPro seeks interim injunctive relief in this court. Id. ¶ 23 (seeking relief "pending a decision from the Contracting Officer").

Furthermore, the court cannot find that the contracting officer has so delayed his decision that this court should deem his or her inaction to be a denial of the claim. See 41 U.S.C. § 7103(f)(3) (imposing overarching requirement that decisions be issued "within a reasonable time"); id. § 7103(f)(5) (providing that a contracting officer's lack of timely action on a claim may be deemed a denial of the claim for purposes of appeal). The CDA provides that for a "[c]laim of more than $100,000 . . . [a] contracting officer shall, within 60 days of receipt of a submitted certified claim over $100,000—(A) issue a decision; or (B) notify the contractor of the time within which a decision will be issued." 41 U.S.C. § 7103(f)(2) (emphasis omitted). Because only a forty-five day period had elapsed between the submission of plaintiff's certified claim on or about November 12, 2014, see Certified Claim, and the filing of plaintiff's December 31, 2014 Complaint, plaintiff has filed its suit in this court prematurely and created a jurisdictional defect that cannot be

---

[1]     Defendant does not dispute plaintiff's averment that it timely submitted a "certified [c]laim" to the contracting officer that addressed an alleged "breach of the [l]ease between the parties in relation to the office space" at issue herein. Pl.'s Reply, ECF No. 7, at ¶ 1; see also Certified Claim, ECF No. 7-1. Therefore, the court need not determine whether CanPro's correspondence with the contracting officer, in fact, amounted to the submission of a "certified claim" for purposes of the CDA. Cf. Fed. Acquisition Reg. (FAR) 2.101 (2014) (defining "claim"); Diversified Maint. Sys., Inc. v. United States, 103 Fed. Cl. 431, 438–39 (2012) (dismissing CDA suit for lack of subject matter jurisdiction based on plaintiff's failure to file a "claim" as that term is defined in regulations and case law); Hamza v. United States, 31 Fed. Cl. 315, 324 (1994) (finding plaintiff's submission regarding leasehold dispute sufficient to qualify as a "claim," but dismissing case for failure to submit a minimally adequate and curable certification).

Nor need the court determine whether plaintiff's certified claim encompassed the interpretation or adjustment of contract terms, or equitable relief, sought herein. Cf. Raytheon Co. v. United States, 747 F.3d 1341, 1354 (Fed. Cir. 2014) ("'An action brought before the Court of Federal Claims under the [CDA] must be based on the same claim previously presented to and denied by the contracting officer.'" (quoting Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003))).

cured by the passage of time after filing of the action, <u>Mendenhall v. United States</u>, 20 Cl. Ct. 78, 84 (1990).

Furthermore, the contracting officer ultimately complied with the CDA's sixty-day notice requirement, 41 U.S.C. § 7103(f)(2)(b), by providing CanPro with written notice dated January 6, 2015 that a final decision would issue within sixty days, that is by March 7, 2015, Pl.'s Reply ¶ 5; CO's Notice. Notwithstanding plaintiff's desire for urgent attention to this matter, the court cannot say that this March 7, 2015 decision deadline is unreasonable. <u>See</u> 41 U.S.C. § 7103(f)(3) (imposing overarching requirement that decisions be issued "within a reasonable time"). The lease at issue has been in place since October 2012. Compl. ¶ 8. The evidence before the court suggests that CanPro became concerned about the government's use of the property in March 2014, if not shortly before then. <u>See</u> Certified Claim (including correspondence dating back to March 2014). At this time—ten months after CanPro took notice of the government's alleged misuse of the leased space and two months after CanPro filed its certified claim—the court does not find that the contracting officer has failed to issue a decision within a reasonable period.[2]

Lastly, the CDA does not provide for interim injunctive relief while a claim is pending. <u>Valley View Enter., Inc. v. United States</u>, 35 Fed. Cl. 378, 385 (1996) (noting that the CDA does not permit a contractor "in advance of a dispute and final decision . . . to seek injunctions . . . that would interfere with the contracting officer's right to direct the manner of performance") (quotation and citation omitted).

Accordingly, because plaintiff's claim is not ripe for review, the court cannot now invoke its CDA-based jurisdiction over the leasehold dispute.

B.    Plaintiff's CDA Mediation Concern Is Not Properly Before This Court

Plaintiff's November 2014 certified claim included a request for mediation pursuant to the terms of the CDA and the lease. Certified Claim; Pl.'s Reply ¶¶ 2, 3. However, "[the government] and/or the Contracting Officer have refused to . . . discuss any mediation in order to expedite matters and address the health and safety issues." Pl.'s Reply ¶ 3. Plaintiff complains that the contracting officer's response to the certified claim was limited to furnishing notice regarding the anticipated decision date on the certified claim, and was otherwise silent regarding plaintiff's request for mediation. <u>Id.</u> ¶¶ 5; <u>see also</u> CO's Notice.

---

[2]    Further delay, however, might be unreasonable based on suggestions in the record presently before the court, <u>see</u> Pl.'s Reply ¶ 12 (noting that the contracting officer expressed an intention to extend by yet another sixty days the date of the decision, as the March 2015 deadline approaches); yet at this time, any additional delay is mere speculation.

The contracting officer's failure to respond to such a request for mediation would appear to be at odds with the statutorily imposed obligation on the officer to respond. See 41 U.S.C. § 7103(h)(3)(A) (requiring response).  CanPro raised this issue pertaining to its mediation request for the first time in its briefing.  See Pl.'s Reply ¶¶ 2–3, 5–12. CanPro did not raise the issue in its Complaint.  Instead, in the Complaint, CanPro focused its effort in this action on obtaining "a preliminary injunction" from this court that would compel the government "to address the health and safety concerns resulting from the SSA's occupancy of the [p]remises and SSA's breach of the [l]ease between the parties."  Pl.'s Reply ¶ 7; see also Compl. ¶¶ 5, 22–23, 25, *11 ("wherefore" clause). Because the relief related to mediation was not sought in the Complaint, it is the view of the court that the issue is not properly before the court for consideration.  Nonetheless, even if CanPro's Complaint had requested relief related to mediation, it is not clear that the court would have the power to remedy this particular alleged inaction by the contracting officer because the decision to participate in mediation is discretionary and is not reviewable by this court.  See 5 U.S.C. § 581(b) (2012) ("A decision by an agency to use or not to use a dispute resolution proceeding . . . shall be committed to [its] discretion . . . and shall not be subject to judicial review, except [under circumstances not relevant here]").

C.    Neither the Tucker Act's Residual Non-CDA Jurisdiction, Nor Plaintiff's Alleged Nuisance Theory, Can Save the Complaint from Dismissal

The Tucker Act broadly vests this court with general jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Thus, outside of the statutory limitations imposed by the CDA, the court can hear a myriad of claims against the government.

The Tucker Act, however, furnishes only a waiver of sovereign immunity; it does not confer any substantive rights that are enforceable against the government.  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). Therefore, the Tucker Act is insufficient to support jurisdiction on its own.  Id.

A party invoking the Tucker Act must identify a separate source of substantive law mandating a right of recovery in money damages.  Id.  This might be accomplished by pleading the breach of a non-CDA agreement, see Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) ("[I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary."), or a violation of any one of a number of money-mandating statutes, regulations, or other sources.

In the event a plaintiff identifies a non-CDA money-mandating source of law to invoke the Tucker Act's general jurisdiction, the court is empowered to grant certain

types of incidental equitable relief in limited circumstances.  See 28 U.S.C. § 1491(a)(2) (providing that equitable powers include authority to "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," as well as "the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just"); see also Terry v. United States, 103 Fed. Cl. 645, 656 (2012) (discussing the narrow circumstances in which the court may entertain claims for injunctive relief); Crane v. United States, 41 Fed. Cl. 338, 339 (1998) (explaining that if a request for injunctive relief is not tied to a monetary claim, the court lacks jurisdiction to hear it).

In this case, however, plaintiff fails to allege a money-mandating source of law or money damages.  While the Complaint includes an allegation that plaintiff has incurred increased security and maintenance costs, Compl. ¶ 15, those potential past and future money damages were not pled as damages in this suit or pursuant to a breach of contract claim; rather, the alleged increased security and maintenance costs are incidental to the thrust of the Complaint, which seeks equitable injunctive relief.  See Public Serv. Co. of Colo. v. Andrus, 433 F. Supp. 144, 148–49 (D. Colo. 1977) (explaining that an action for declaratory or injunctive relief that has some incidental effect on a future monetary claim does not convert a case into one for Tucker Act jurisdiction); cf. Consol. Edison of N.Y. v. United States, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (explaining that a party may not circumvent the Court of Federal Claims' jurisdiction by framing a complaint as one for equitable relief where the thrust of the suit is to obtain money from the government); Kanemoto v. Reno, 41 F.3d 641, 646 (Fed. Cir. 1994) (same); Doko Farms v. United States, 13 Cl. Ct. 48, 60 (1987) ("The mere fact that the equitable relief demanded has a monetary aspect to it does not deprive the District Court of jurisdiction.").

It would be futile at this time to allow CanPro to amend its pleading to cure the money damages defect because the cure would require the addition of a breach of non-CDA contract claim.  See Pl.'s Reply ¶ 13 (asserting "the underlying case involves a breach of contract claim").  However, as already discussed, CanPro's exclusive remedy for the alleged breach of this lease is through the CDA, and its CDA-breach claim, or the related relief CanPro might seek, is not yet ripe for review.  See supra Part II.A.  Moreover, even if the court had before it a properly pled non-CDA breach of lease claim, it is unlikely it could grant plaintiff an injunction.  See, e.g., Pellegrini v. United States, 103 Fed. Cl. 47, 53–55 (2012) (discussing the court's limited equitable powers).  Accordingly, outside of the CDA, there is no residual Tucker Act jurisdiction that can save plaintiff's Complaint from dismissal.

Likewise, plaintiff cannot rely on a nuisance theory to support its request for injunctive relief.  See, e.g., Compl. ¶ 31(A) (averring that plaintiff "can establish a private nuisance against [the government]").  Nuisance is a tort, see Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1353 (Fed. Cir. 2001); Avery v. United States, 330 F.2d 640, 644 (Ct. Cl. 1964) (explaining nuisance "sound[s] in tort"), and this court plainly

lacks jurisdiction over tort claims, 28 U.S.C. § 1491(a)(1) (limiting jurisdiction to claims "not sounding in tort"); <u>Gable v. United States</u>, 106 Fed. Cl. 294, 297 (2012) ("The United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims."); <u>Nw. La. Fish & Game Preserve Comm'n v. United States</u>, 79 Fed. Cl. 400, 405–06 (2007) (dismissing complaint based upon allegations that the government's action constituted a nuisance because the court lacked jurisdiction over claims sounding in tort).

      D.     Transfer Is Inappropriate

Once the court determines that it lacks jurisdiction over a claim, it may transfer the claim to a court that does have jurisdiction over the claim if the transfer "is in the interest of justice." 28 U.S.C. § 1631; <u>Joslyn v. United States</u>, 420 F. App'x 974, 978 (Fed. Cir. 2011); <u>see also</u> <u>Tex. Peanut Farmers v. United States</u>, 409 F.3d 1370, 1374–75 (Fed. Cir. 2005) (stating that there is a "statutory requirement that [a] transfer be considered to cure jurisdictional defects" and that a trial court may order such transfer sua sponte).

Only this court (or a contract board) possesses jurisdiction to entertain a CDA claim. <u>See</u> 28 U.S.C. § 1491(a) (waiving sovereign immunity for CDA claims in this court); 41 U.S.C. § 7104 (affording contractor the option of appealing a contracting officer's decision to either an agency board or this court). Thus, because no other court can exercise jurisdiction over plaintiff's CDA claim, the court cannot transfer such claim.

In contradistinction, a nuisance claim would be subject to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (2012), over which type of claim the district courts have exclusive jurisdiction, 28 U.S.C. § 1346(b)(1) (2012). Because plaintiff did not address the issue of a transfer in its brief, and because there is no evidence in the record to suggest that CanPro has complied with the administrative prerequisites to bring a tort claim under the FTCA, <u>see</u> 28 U.S.C. § 2675(a) (requiring claimant to file a claim with the appropriate federal agency and await the agency's final decision before filing in district court), the court declines to direct the transfer of this case to a district court.

III.    Conclusion

For the reasons set forth herein, defendant's motion to dismiss is **GRANTED**. The clerk shall enter judgment accordingly.

    IT IS SO ORDERED.

                      s/ Patricia Campbell-Smith
                      PATRICIA CAMPBELL-SMITH
                      Chief Judge